## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH SANT, MERTON CHUN, RONESHA SMITH, and HEATHER NICASTRO, individually and on behalf of all others similarly situated, | CASE NO. 2:24-cv-1626 |
| Plaintiffs, | **COMPLAINT—CLASS ACTION** |
| v. | (JURY TRIAL DEMANDED) |
| ROCKETREACH LLC, | |
| Defendant. | |

On behalf of themselves and all others similarly situated, Joseph Sant ("Plaintiff Sant"), Merton Chun ("Plaintiff Chun"), Ronesha Smith ("Plaintiff Smith"), and Heather Nicastro ("Plaintiff Nicastro") complain and allege as follows based on personal knowledge as to themselves, the investigation of their counsel, and information and belief as to all other matters, and demand trial by jury. Plaintiffs believe that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

### NATURE OF THE CASE

1.      This case is about upholding the rights of millions of Americans who have never interacted with RocketReach LLC ("RocketReach" or "Defendant") but who have nonetheless had their names, photographs, and other personally

identifying information misappropriated by Defendant to advertise and promote its products and services.

2.      Defendant has built a lucrative business collecting, cataloging, and selling access to Americans' personally identifying information.  The crux of Defendant's business model is selling subscriptions to its web-based platform, which provides access to a vast database of personally identifying information and a suite of other business development products.

3.      To maximize the revenue it generates from subscriptions, Defendant misappropriates the names, photographs, identities, personas, and other personally identifying information it has collected on millions of Americans in advertisements for its platform.  Defendant does this in two primary ways.

4.      First, Defendant has created, published, and disseminated publicly accessible free-preview "profile" pages for each of the millions of Americans (including Plaintiffs and each of the proposed class members) whose personal information appears in its database.  Each of these free-preview "profile" pages includes the name, job title, employer, educational history, and other personally identifying information of the person to whom it corresponds.  Many of these free-preview "profile" pages also feature a photograph of the person to whom the page corresponds.  Defendant has carefully optimized each free-preview "profile" page with source code which maximizes its visibility on internet search engines.

CLASS ACTION COMPLAINT

5.    Each free-preview "profile" page uses its subject's name and other personal attributes to advertise subscriptions to Defendant's platform. Each page displays the subject's name, often their image, and other personally identifying details alongside a button encouraging to "Sign Up" to purchase a subscription, as well as other message advertising subscriptions to Defendant's platform.

6.    Second, Defendant offers "free trials" of its platform to prospective customers. A "free trial" allows anyone to access all of the names and corresponding personally identifying information of each of the millions of people whose information Defendant has catalogued in its platform. Defendant has published millions of free-trial "profile" pages which misappropriate the name, job title, employer, educational history, and other personally identifying information of the person to whom it corresponds. Many free-trial "profile" pages also feature a photograph of the person to whom the page corresponds. As with the free-preview "profile" pages, Defendant publishes these free-trial "profile" pages with the goal of enticing prospective customers to purchase subscriptions to its platform. Defendant displays the Plaintiffs' and putative class members' names, images, and other personally identifying information alongside inducements to sign up for a subscription to its platform on these free-trial "profile" pages.

7.    In these ways, Defendant uses the names, photographs, personas, and identities of Plaintiffs and millions of other unsuspecting Americans to advertise and

CLASS ACTION COMPLAINT

promote subscriptions to its platform without providing prior notice to, much less obtaining consent from, any of these people.

8.    The right of publicity statutes of Washington, California, Illinois, and Ohio clearly prohibit what Defendant has done.

9.    Washington's Personality Rights Act ("WPRA") prohibits companies like Defendant from using a person's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the person's consent.  *See* RCW 63.60.050.

10.    The California Right of Publicity Law ("CRPL") provides that "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code § 3344.

11.    The Illinois Right of Publicity Act ("IRPA") ensures an individual the "right to control and to choose whether and how to use an individual's identity for commercial purposes."  765 ILCS 1075/10.  It provides that "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person . . . ."

CLASS ACTION COMPLAINT

765 ILCS 1075/30.  It defines an "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice."

12.    The Ohio Right of Publicity in Individual's Persona Act ("ORPIPA") creates a "property right in an individual's persona to use the individual's persona for a commercial purpose."  Ohio Rev. Code Ann. § 2741.01.  It defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  Ohio Rev. Code Ann. § 2741.01(A).  It provides that "Commercial purpose" means," *inter alia*, the use of a persona "For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  Ohio Rev. Code Ann. § 2741.01(B).

13.    The WPRA, CRPL, IRPA, and ORPIPA are herein collectively referred to at times as the "Right of Publicity Statutes."

14.    As alleged herein, Defendant systematically uses Plaintiffs' and millions of other Americans' names, identities, and other personally identifying information to advertise, promote, and sell subscriptions to its platform, without having asked for, much less obtained, any of their consent – in clear violation of the Right of Publicity Statutes.

CLASS ACTION COMPLAINT

15.    Accordingly, Plaintiffs bring this action, individually and on behalf of the proposed classes defined below, to redress and put a stop to Defendant's violations of the Right of Publicity Statutes.

## PARTIES

16.    Defendant RocketReach LLC ("Defendant" or "RocketReach") is a Wyoming limited liability company with its principal place of business in Bellevue, Washington.  Defendant owns and operates the website www.rocketreach.co, where it sells products and services to persons throughout the United States.  Defendant may be served through its registered agent Registered Agents Inc. at 30 North Gould Street, Suite R, Sheridan, WY 828201.

17.    Plaintiff Sant is a natural person and is, and at all times relevant hereto was, a resident of University Place, Washington.

18.    Plaintiff Chun is a natural person and is, and at all times relevant hereto was, a resident of South San Francisco, California.

19.    Plaintiff Smith is a natural person and is, and at all times relevant hereto was, a resident of Chicago, Illinois.

20.    Heather Nicastro is a natural person and is, and at all times relevant hereto was, a resident of Cleveland, Ohio (together with Plaintiff Sant, Plaintiff Chun, and Plaintiff Smith, "Plaintiffs").

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

21.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of each of the putative classes is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to each of the putative classes, exclusive of interest and costs, and (iii) there are at least 100 members of each of the putative classes.

22.    Personal jurisdiction and venue are proper because Defendant maintains its principal place of business in Bellevue, Washington, which is within this judicial District.

23.    Additionally, the Court has personal jurisdiction over Defendant because Defendant collected, published, and disseminated the personally identifying information giving rise to this lawsuit in this District, Defendant conducts substantial business in this District (including maintaining office space and employing individuals in this District), and the conduct giving rise to this action arises out of and relates to that business.  Indeed, Defendant purposefully avails itself of the benefits of this District by selling subscriptions to its platform to persons whom Defendant knows to reside in this District (based on billing information provided to Defendant at checkout).

CLASS ACTION COMPLAINT

24.     Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts and events giving rise to the claims occurred in this District.

## APPLICABLE STATUTORY SCHEMES

### I.     Washington's Personality Rights Act

25.     The WPRA defines a property right in the use of several characteristics associated with one's identity: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." *See* RCW 63.60.010.

26.     The WPRA specifies that it is "intended to apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death." *Id*.

27.     The WPRA prohibits companies like Defendant from, *inter alia*, publicly using or holding out an individual's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the individual's consent. *See* RCW 63.60.050.

28.     The WPRA provides for, *inter alia*, statutory damages of $1,500.00 per violation of the statute and injunctive relief. *See* RCW 63.60.060.

29.     As explained below, Defendant disregarded its legal responsibilities to all of the Plaintiffs and millions of other Americans nationwide by using their names

and other personally identifying information to sell and offer to sell subscriptions to its platform, without any of their consent—in direct violation of the WPRA.

## II.    California's Right of Publicity Law

30.    Recognizing the need to protect its citizens' rights of publicity, the California legislature enacted the CRPL to establish a right to control the use of one's name and likeness, among other identifying attributes, in commercial advertising.

31.    The CRPL prohibits companies like Defendant from, *inter alia*, using an individual's name or likeness, in any manner, to advertise or sell, or solicit purchases of, products or services. Specifically, Section (a) of the CRPL states, in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

32.    The CRPL provides for, *inter alia*, statutory damages of $750.00 per violation, as well as any profits attributable to the unauthorized use of the person's name or likeness. *See id.* § 3344(a).

33.     As explained below, Defendant disregarded its legal responsibilities to Plaintiff Chun and millions of other California residents by using their names and other personally identifying information to advertise and promote, and to solicit sales of, subscriptions to its platform, without any of their consent—in direct violation of the CRPL.

### III.    Illinois's Right of Publicity Act

34.     The IRPA prohibits companies like Defendant from, *inter alia*, publicly using or holding out an individual's identity, such as their name, likeness, or other personally identifying attribute, in connection with the sale or offering for sale of a product, good, or service.  *See* 765 ILCS 1075/5, 30(a).  Specifically, Section 30 of the IRPA states, in pertinent part:

> A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

765 ILCS 1075/30(a).

35.     The IRPA defines "identity" as "an attribute of an individual that serves to identify the individual to an ordinary, reasonable viewer, or listeners including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice."  765 ILCS 1075/5.

CLASS ACTION COMPLAINT

36.     The IRPA defines "commercial purpose" as, *inter alia*, "the public use or holding out of an individual's identity . . . on or in connection with the offering for sale or sale of a product, merchandise, goods, or services," or "for purposes of advertising or promoting products, merchandise, goods, or services[.]"  765 ILCS 1075/5.

37.     The IRPA provides for, *inter alia*, statutory damages of $1,000.00 per violation of the statute, as well as punitive damages for willful violations.  *See* 765 Ill. Comp. Stat. 1075/40.

38.     As explained below, Defendant disregarded its legal responsibilities to Plaintiffs Aitken and Anaya and millions of other Illinois residents by using their names and other personally identifying information to sell and offer to sell subscriptions to its platform, without any of their consent—in direct violation of the IRPA.

**IV.     Ohio's Right of Publicity in Individual's Persona Act**

39.     Ohio similarly recognizes the need to protect individuals' ability to control how their personas are used for commercial purposes.  Its legislature enacted ORPIPA to recognize a right of control over the commercial use of one's persona and establish a legal regime for the protection of that right.

40.     ORPIPA creates a "property right in an individual's persona to use the individual's persona for a commercial purpose."  Ohio Rev. Code Ann. § 2741.01.

41.    ORPIPA defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  Ohio Rev. Code Ann. § 2741.01(A).

42.    ORPIPA defines "commercial purpose" to include, *inter alia*, uses of an individual's persona "[f]or advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  Ohio Rev. Code Ann. § 2741.01(B).

43.    ORPIPA provides that, subject to certain exceptions not applicable here, "a person shall not use any aspect of an individual's persona for a commercial purpose . . . [d]uring the individual's lifetime."  Ohio Rev. Code Ann. § 2741.02(A).

44.    "A person who violates section 2741.02 of the Revised Code is liable in a civil action to the person injured by the violation for," *inter alia*, "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars[.]"  Ohio Rev. Code Ann. § 2741.07.

## FACTUAL BACKGROUND

45.    As the self-styled "world's largest and most accurate contact database," Defendant has built a lucrative business selling subscriptions to its web-based platform and related products and services.[1]

---

[1]  RocketReach, "Contact Database – Data & Email Deliverability - RocketReach," available at https://rocketreach.co/resources/products/contact-database/.

CLASS ACTION COMPLAINT

46.     Defendant operates the website www.rocketreach.co (the "Website").[2]

47.     Defendant's Website hosts a subscription platform which provides its customers access to a contact database and a suite of business-development tools.

48.     To promote subscriptions to this platform, Defendant has published millions of webpages which misappropriate individual Americans' names, photographs, personas, identities, and other personally identifying information without ever obtaining consent from those individuals.

49.     Defendant's misappropriation of millions of Americans' names, photographs, personas, identities, and other personally identifying information in this manner directly violates each of the Right of Publicity Statutes.

**I.     Defendant's Website Hosts a Subscription Platform Designed for Lead Generation and Business Development**

50.     The Website www.rocketreach.co hosts Defendant's web-based subscription platform.

51.     Paying subscribers to Defendant's platform gain access to a vast database of Americans' personally identifying information, including their names, photographs, email addresses, phone numbers, physical addresses, employers, educational histories, and more.

---

[2] Unlike many domain names which end in ".com," the top-level domain in the URL for Defendant's website is ".co".

CLASS ACTION COMPLAINT

52.    According to Defendant, its subscribers can access the information from "700 million profiles, 60 million companies, and 150 million phone numbers." With that many contacts, Defendant, proclaims "you're sure to find everyone."[3]

53.    Defendant's platform is more than just a contact database, however. The platform offers an integrated suite of lead generation and business development products and services.

54.    For example, subscribers to Defendant's platform have access to a feature called "RocketReach Messages."  This feature allows subscribers to "write and automate emails directly from RocketReach for seamless communication and increased productivity."[4]

55.    Paid subscribers to Defendant's platform can also access a service called "Autopilot."  This service permits "end-to-end automation from prospecting through engagement – all within RocketReach."[5]  Autopilot, like many other features of Defendant's platform, is only available to "paid customers."[6]

---

[3]    RocketReach, "RocketReach Information," available at https://rocketreach.co/rocketreach-profile_b4d23efdf855f2de.

[4] RocketReach. "Messages, an email automation tool – RocketReach," available at https://rocketreach.co/resources/products/messages/.

[5]    RocketReach, "Introducing RocketReach Autopilot," available at https://rocketreach.co/resources/introducing-rocketreach-autopilot/.

[6] *Id.*

CLASS ACTION COMPLAINT

56.    Paid subscribers to Defendant's platform can also access a service called "Intent Data."  This service uses artificial intelligence to provide insights into potential leads' "interests, needs, and purchase intentions" to help sales teams "quickly and efficiently improve lead qualification, personalize marketing campaigns, optimize sales strategies, and facilitate data-driven decision-making to better target, engage, and convert potential customers."[7]  Intent Data is only available to paid subscribers.

57.    Certain paid subscribers to Defendant's platform can also access a service called "RocketReach for Healthcare."  This service provides "contact information for millions of professionals working in hospitals, healthcare, biotechnology, and more."[8]

58.    Various other products and services are offered through paid subscriptions to Defendant's platform.  These include access to organizational

---

[7]    RocketReach, "B2B Intent Data – RocketReach," available at https://rocketreach.co/resources/products/b2b-intent-data/.

[8]    RocketReach, "RocketReach launches RocketReach for Healthcare and RocketReach Messages," available at https://www.prnewswire.com/news-releases/rocketreach-launches-rocketreach-for-healthcare-and-rocketreach-messages-302205359.html.

CLASS ACTION COMPLAINT

charts, the ability to export contacts lists, team management tools, business coaching, a browser extension, API access, and third-party application integrations.[9]

59.    To access Defendant's contact database and the related products and services, Defendant offers several tiers of paid subscriptions:[10]



---

[9] RocketReach, "RocketReach Team and Custom Plans – RocketReach," available at https://rocketreach.co/resources/team-and-custom-plans/.

[10]    RocketReach, "RocketReach.co Pricing," available at https://rocketreach.co/pricing.

CLASS ACTION COMPLAINT

60.    Defendant also offers "Team Plans" designed for enterprise customers.[11]



61.    Defendant has built and now reaps significant profit from this business by trading off the names, photographs, personas, and identities of millions of

---

[11] *Id.*

Americans to promote its platform, without obtaining their consent or providing them compensation of any kind.

62.    Defendant has done this by publishing millions of free-preview and free-trial "profile" pages which use the names, photographs, email addresses, phone numbers, physical addresses, employers, educational history, and more about individual Americans to advertise subscriptions to its web-based platform.

63.    Defendant has published and disseminated the free-preview and free-trial "profile" pages in every state in the United States.

64.    Defendant has published and disseminated the free-preview and free-trial "profile" pages from its principal place of business, which is located in Washington state.[12]

---

[12] Defendant has admitted in previous litigation that its principal place of business is in Washington state.  *See* Answer to Complaint and Affirmative Defenses, *Krause v. RocketReach, LLC*, No. 21-cv-01938, 2 (N.D. Ill.) (Oct. 5, 2021).  Defendant also admitted that Washington state houses its "principal office address" in the Articles of Domestication it filed when changing its state of incorporation from California to Wyoming.  *See* RocketReach, LLC, Foreign Limited Liability Company Articles of Domestication (Dec. 31, 2019) (available in the records of the Wyoming Secretary of State).

CLASS ACTION COMPLAINT

II.    **Defendant Systematically Misappropriates the Names, Photographs, Personas, and Identities of Millions of Americans to Promote Subscriptions to Its Platform**

65.    Defendant uses the names, photographs, personas, and identities of millions of Americans as bait to entice prospective consumers to its website and advertise subscriptions to its platform.

66.    Defendant does this in two principal ways, through the publication of (1) free-preview "profile" pages and (2) free-trial "profile" pages.

67.    Defendant has created, published, and disseminated millions of these "profile" pages to advertise its business.

68.    Every one of these "profile" pages uses the personal attributes of an individual American—attributes whose use for advertising purposes is protected by the Right of Publicity Statutes—to promote subscriptions to Defendant's platform.

A.    **Defendant's Free-Preview "Profile" Pages Systematically Misappropriate the Names, Photographs, Personas, and Identities of Millions of Americans**

69.    Defendant has created, published, and disseminated millions of free-preview "profile" pages which misappropriate the names, photographs, personas, and identities of millions of Americans to advertise subscriptions to its platform.

70.    An example free-preview "profile" page is pictured below.



71.     This example free-preview "profile" page uses the name, photograph, persona, and identity of Andrew Tso, a founder of RocketReach, to advertise subscriptions to Defendant's platform.[13]

---

[13]    RocketReach, "Andrew Tso E-mail & Phone Number," available at https://rocketreach.co/andrew-tso-email_1430550.

CLASS ACTION COMPLAINT

72.     The free-preview "profile" page pictured above is representative of millions of similar pages published by Defendant to advertise subscriptions to its web-based platform, including pages misappropriating the protected personal attributes of each of the Plaintiffs and putative 'free-preview' class members. Each page has the same structural elements and displays the broad same categories of information. Each page displays the same "buttons," which lead to the same places when clicked. However, the details under each category of information change across the different free-preview "profile" pages to correspond to the individual to whom any given such page specifically relates.

73.     As shown in the example above, the free-preview "profile" page prominently displays the name, photograph, job title, employer, work history, and educational background of the individual to whom the page corresponds.

74.     As shown in the example above, the free-preview "profile" page also displays links reading "Sign Up" and "View [Name's] Email & Phone Number (It's Free)" alongside the protected personal attributes of the individual to whom the page corresponds. Clicking these links bring prospective customers directly into the subscription registration flow for Defendant's platform.

75.     As shown in the example above, the free-preview "profile" page also displays a message stating "If you need more lookups, subscriptions start at $48

CLASS ACTION COMPLAINT

USD/month" alongside the name, photograph, identity, and persona of the individual to whom the page corresponds.

76.    Further down the same page, each free-preview "profile" page promotes subscriptions to Defendant's platform in the following manner:



77.    Defendant has published millions of these free-preview "profile" pages using the names, photographs, identities, personas, and other personally identifying information of millions of Americans.  Defendant aggressively promotes and disseminates these pages in all fifty states in the nation.

78.    Defendant has intentionally optimized each of the free-preview "profile" pages to rank highly in search engine results when someone searches for

the name and other personally identifying attributes of the individual to whom any given page corresponds.

79.    Specifically, Defendant includes source code in every free-preview "profile" page to ensure that it ranks highly in search engine results when a user inputs a search query for an individual's name and other personal information, including through the following search engine optimization strategies:

- Placing the individual's name on the page over a dozen times.  For example, Andrew Tso's name appears at least 19 times on the free-preview "profile" page corresponding to him.

- Placing the individual's name in the page's URL.  For example, Andrew Tso's name appears in the URL of the free-preview "profile" page corresponding to him:



- Placing the individual's name, employer, and job title in the page titles. For example, Andrew Tso's name appears in the page title for the free-preview "profile" page corresponding to him, which is entitled "Andrew Tso Email & Phone Number | RocketReach.co Founder Contact Information."  This is reflected in the Open Graph meta field of the page's html source code: `<title>Andrew Tso Email &amp;`

CLASS ACTION COMPLAINT

```
Phone   Number   |   RocketReach.co   Founder   Contact
Information</title>
```

80.    Each of these web design techniques is intended to optimize the ranking of the free-preview "profile" pages in search engine results when a user searches for the name and associated personal attributes of an individual with a free-preview "profile" page—and thereby increase sales of subscriptions to Defendant's platform.

81.    Defendant applies each of these web design techniques to the free-preview "profile" pages misappropriating Plaintiffs' and the putative class members' names, identities, personas, and other personally identifying information (often including photographs).

82.    Defendant could have easily prevented the free-preview "profile" pages from appearing in search engine results by adding a "noindex" directive to the pages' source code.[14]  Defendant chose not to.

83.    Plaintiffs are informed and believe, and thereupon allege, that during the time period applicable to this action numerous non-subscribers to Defendant's services performed searches on Google and other search engines that yielded results that included hyperlinks to each of the Plaintiffs' free-preview "profile" pages, along

---

[14] A "noindex" directive is a piece of code on the page that instructs search engines not to index the page.  *See* Google Search Central, *Block Search indexing with noindex*, available at https://developers.google.com/search/docs/crawling-indexing/block-indexing.

CLASS ACTION COMPLAINT

with summaries of the information available on such "profile" pages in the search-engine results themselves (including each of the Plaintiffs' names and other personal information pertaining to each of them).

84.    Plaintiffs are informed and believe, and thereupon allege, that during the time period applicable to this action numerous non-subscribers to Defendant's services visited each of the Plaintiffs' free-preview "profile" pages by clicking on a link to such page in the results page of a search performed on Google or another search engine.

85.    Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each free-preview "profile" pages is viewed by a non-subscriber, the location from which the visitor to the page originated, and the total numbers of persons who have visited a particular free-preview "profile" page.[15]

86.    Defendant continues to improve the coding of its free-preview "profile" pages to maximize their visibility to the public in the results yielded by searches on Google and other popular search engines, and employs persons (and works with contractors) who focus specifically on these efforts.

---

[15]    RocketReach, *Privacy Policy*, July 15, 2024, available at https://rocketreach.co/privacy.

87.     Upon information and belief, search engine users have placed queries for the names of each of the Plaintiffs and putative class members, obtained results which display links to the respective free-preview "profile" pages corresponding to each of Plaintiffs and the putative class members, clicked on those links, and borne witness to the advertisements published by Defendant which misappropriate Plaintiffs' and the putative class members' names, photographs, identities, personas, and other personally identifying information as described herein.

88.     Defendant knows that its use of free-preview "profile" pages to advertise subscriptions to its platform infringes upon Plaintiffs' and the proposed class members' rights of publicity, but continues to do so anyway—and appears to have simply written off the consequences as a cost of doing business.[16]

89.     Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through the free-preview "profile" pages published on the Website.

90.     Defendant has published free-preview "profile" pages and the related pages on the Website for each of the Plaintiffs and the putative 'free-preview' class members.

---

[16] *See* Class Action Settlement Agreement, *Krause v. RocketReach, LLC*, No. 21-cv-01938 (N.D. Ill.) (Aug. 21, 2023) (resolving a previous class action in which plaintiffs alleged Defendant used their names and likenesses on its free-preview "profile" pages in violation of Illinois's right of publicity statute).

CLASS ACTION COMPLAINT

**B.      Defendant's Free-Trial "Profile" Pages Systematically Misappropriate the Names, Photographs, Personas, and Identities of Millions of Americans**

91.     Defendant publishes a second set of online "profile" pages which misappropriate the names, photographs, personas, and identities of millions of Americans to advertise subscriptions to its platform.

92.     This second set of "profile" pages are accessible to "free trial" users of Defendant's platform and are similarly designed to advertise and promote subscriptions to Defendant's platform.

93.     A typical visitor's journey into a "free trial" offered by Defendant begins on one of the millions of free-preview "profile" pages described above that Defendant has designed, published, and disseminated as bait for potential customers.

94.      When a visitor clicks on one of several links on any free-preview "profile" page—including the links reading "Sign Up," "View [Name's] Email and Phone Number"—they are directed into the sign-up flow for Defendant's platform.

95.     After creating an account, the visitor is granted a "free trial" of Defendant's platform.  "Free trial" users have partial, limited access to Defendant's platform.  They cannot access certain premium features, such as Autopilot, Intent Data, or RocketReach for Healthcare.  They are only permitted to view five free-trial "profile" pages per month.

CLASS ACTION COMPLAINT

96.     The free-trial "profile" pages each center around one individual.  They display that individual's name, photograph, place of residence, employer, work history, educational history, and contact information, among other attributes.   An example of a free-trial profile page, this one centering around RocketReach founder Andrew Tso, is displayed below.[17]



---

[17] The red circles have been added for emphasis.

CLASS ACTION COMPLAINT

97.    As shown in the example above, the free-trial "profile" pages display the name, photograph, identity, and persona of the individual to whom any given such page corresponds alongside a button to "Upgrade Now."

98.    As shown in the example above, the free-trial "profile" pages also display the name, photograph, identity, and persona of the individual to whom any such page corresponds alongside a button stating "Your plan doesn't currently include phone information.  **Learn more**."

99.    Clicking either of these buttons brings visitors directly to a page presenting "Plans and Pricing" for subscriptions.

100.    As shown above, the free-trial "profile" pages display the name, photograph, identity, and persona of the individual to whom any such page corresponds alongside buttons for "Healthcare" and "Intent,"—each of which have lock icons next to them indicating they are unavailable to "free trial" users.  Clicking on either of these buttons causes a message to be displayed which informs the "free trial" user that the feature is not available in his or her current plan and inviting the user to "upgrade" to a paid subscription.

101.    The free-trial "profile" page pictured above is representative of millions of similar pages published by Defendant to advertise subscriptions to its web-based platform.  Each page has the same structural elements and displays the broad same categories of information.  Each page displays the same "buttons," which lead to the

same places when clicked.  However, the details under each category change across different free-trial "profile" pages to correspond to the individual to whom any given page specifically relates.

102.   Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through the free-trial "profile" pages published on the Website.

103.   Defendant has published free-trial "profile" pages and the related pages on the Website for each of the Plaintiffs and the putative 'free-trial' class members.

104.   Upon information and belief, free-trial users of Defendant's platform have placed queries for the names of each of the Plaintiffs and putative class members, obtained results which display links to the respective free-trial "profile" pages corresponding to each of Plaintiffs and the putative class members, clicked on those links, and borne witness to the advertisements published by Defendant which misappropriate Plaintiffs' and the putative class members' names, photographs, identities, personas, and other personally identifying information as described herein.

105.   Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through the free-trial "profile" pages published on the Website.

C.    **Defendant Misappropriates the Names, Photographs, Personas, and Identities of Each of the Plaintiffs in Free-Preview and Free-Trial "Profile" Pages Which It Published to Advertise Subscriptions to Its Platform**

106.    Defendant has misappropriated the protected personal attributes of each of the Plaintiffs on free-preview and free-trial "profile" pages that it published in order to advertise subscriptions to its platform.

    i.    **Plaintiff Sant**

107.    Plaintiff Sant is a resident of University Place, Washington.

108.    Plaintiff Sant has worked in various positions at the Center for New York City Neighborhoods, including as a General Counsel and Vice President, Deputy General Counsel, and Director of Homeowner Services.

109.    Plaintiff Sant obtained a Bachelor of Arts from the University of Washington.

110.    Plaintiff Sant obtained a Juris Doctorate from Georgetown University Law Center.

111.    Plaintiff Sant formerly lived in New York, New York.

112.    Defendant has published a free-preview "profile" page on its Website which misappropriates Plaintiff Sant's name, photograph, identity, and persona to

advertise subscriptions to Defendant's web-based platform.  An excerpt from that page appears in the following screenshot.[18]



113.    Plaintiff Sant's name appears no less than 15 times on the free-preview "profile" page which misappropriates his name, photograph, identity, persona, and other personally identifying information.

---

[18] RocketReach, "Joseph Sant Email & Phone Number | Center for New York City Neighborhoods," available at https://rocketreach.co/joseph-sant-email_44664370.

CLASS ACTION COMPLAINT

114.   Defendant published this free-preview "profile" page for the sole purpose of advertising subscriptions to its platform.

115.   As shown above, the free-preview "profile" page misappropriating Plaintiff Sant's name, photograph, identity, and persona displays buttons encouraging visitors to "Sign Up" and to "View Joseph's Email & Phone Number." Clicking either of those buttons brings users directly into the registration flow for Defendant's platform.

116.   As shown above, the free-preview "profile" page misappropriating Plaintiff Sant's name, photograph, identity, and persona displays a message stating "If you need more lookups, subscriptions start at $48 USD/month."

117.   Defendant has also published a free-trial "profile" page which misappropriates Plaintiff Sant's name, photograph, identity, and persona to advertise subscriptions to its web-based platform.

118.   The free-trial "profile" page misappropriating Plaintiff Sant's protected personal attributes displays his name, photograph, and other personally identifying information alongside a button to "Upgrade Now."

119.   The free-trial "profile" page misappropriating Plaintiff Sant's protected personal information displays his name, photograph, identity, and other personally identifying information alongside a button stating "Your plan doesn't currently include phone information. **Learn more**."

120.   Clicking either of these buttons brings visitors directly to a page presenting "Plans and Pricing" for subscriptions to Defendant's platform.

121.   The free-trial "profile" page misappropriating Plaintiff Sant's protected personal information displays his name, photograph, and other personally identifying information alongside buttons for "Healthcare" and "Intent," each which have lock icons next to them indicating they are unavailable to "free trial" users. Clicking on either of these buttons causes a message to be displayed which informs the "free trial" user that the feature is not available in his or her current plan and inviting the user to "upgrade" to a paid subscription.

122.   Plaintiff Sant never consented the use of his name, photograph, identity, or persona for use in Defendant's free-preview and free-trial "profile" pages promoting subscriptions to its platform.

123.   Plaintiff Sant values his right to control the commercial use of his name, photograph, identity, persona, and other personally identifying information.

124.   Plaintiff Sant's name, photograph, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's misappropriation of these protected personal attributes in advertising for its web-based subscription platform.

125.   Defendant benefits from its misappropriation of Plaintiff Sant's name, photograph, identity, persona, and other personally identifying information because

CLASS ACTION COMPLAINT

its use of Plaintiff Sant's protected personal attributes in pages promoting subscriptions to its platform entices potential customers to purchase paid subscriptions to its platform.

126. Additionally, the inclusion of Plaintiff Sant's and millions of other persons' protected personal attributes in free-preview and free-trial "profile" pages on Defendant's Website demonstrates the breadth of information available to Defendant's prospective customers. Demonstrating this breadth of this information through the use of Plaintiff Sant's and the putative class members' names, photographs, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

127. Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Sant's name, photograph, identity, persona, and other personally identifying information appears alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

128. Plaintiff Sant suffered mental anguish as a result of Defendant's unauthorized uses of his name, photograph, identity, and persona on the Website in the manner alleged herein. Upon learning that his name, photograph, and other

personally identifying information was being used by Defendant to advertise its products and services on the open market for its own financial gain, Plaintiff Sant became worried, frustrated, and concerned, disturbing his peace of mind in a meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

### ii.    Plaintiff Merton Chun

129.   Plaintiff Chun is a resident of South San Francisco, California.

130.   Plaintiff Chun has worked as a real estate broker and administrator.

131.   Plaintiff Chun obtained a Bachelor of Arts from the University of Hawaii.

132.   Defendant has published a free-preview "profile" page on its Website which misappropriates Plaintiff Chun's name, photograph, identity, and persona to advertise subscriptions to Defendant's web-based platform.  An excerpt from that page appears in the following screenshot.[19]

---

[19] RocketReach, "Merton Chun Email & Phone Number | California Real Estate Broker," available at https://rocketreach.co/merton-chun-email_233182937.

CLASS ACTION COMPLAINT



133.    Plaintiff Chun's name appears no less than 16 times on the free-preview "profile" page which misappropriates his name, photograph, identity, persona, and other personally identifying information.

134.    Defendant published this free-preview "profile" page for the sole purpose of advertising subscriptions to its platform.

135.    As shown above, the free-preview "profile" page misappropriating Plaintiff Chun's name, photograph, identity, and persona displays buttons

CLASS ACTION COMPLAINT

encouraging visitors to "Sign Up" and to "View Merton's Email & Phone Number." Clicking either of those buttons brings users directly into the registration flow for Defendant's platform.

136.    Defendant has also published a free-trial "profile" page which misappropriates Plaintiff Chun's name, photograph, identity, and persona to advertise subscriptions to its web-based platform.

137.    The free-trial "profile" page misappropriating Plaintiff Chun's protected personal information displays his name, photograph, and other personally identifying information alongside a button to "Upgrade Now."  Clicking this button brings visitors directly to a page presenting "Plans and Pricing" for subscriptions to Defendant's platform.

138.    The free-trial "profile" page misappropriating Plaintiff Chun's protected personal information displays his name, photograph, and other personally identifying information alongside buttons for "Healthcare" and "Intent," each which have lock icons next to them indicating they are unavailable to "free trial" users. Clicking on either of these buttons causes a message to be displayed which informs the "free trial" user that the feature is not available in his or her current plan and inviting the user to "upgrade" to a paid subscription.

139.    Plaintiff Chun never consented the use of his name, photograph, identity, or persona for use in Defendant's free-preview and free-trial "profile" pages promoting subscriptions to its platform.

140.    Plaintiff Chun values his right to control the commercial use of his name, photograph, identity, persona, and other personally identifying information.

141.    Plaintiff Chun's name, photograph, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's misappropriation of these protected personal attributes in advertising for its web-based subscription platform.

142.    Defendant benefits from its misappropriation of Plaintiff Chun's name, photograph, identity, persona, and other personally identifying information because its use of Plaintiff Chun's protected personal attributes in pages promoting subscriptions to its platform entices potential customers to purchase paid subscriptions to its platform.

143.    Additionally, the inclusion of Plaintiff Chun's and millions of other persons' protected personal attributes in free-preview and free-trial "profile" pages on Defendant's Website demonstrates the breadth of information available to Defendant's prospective customers.  Demonstrating this breadth of this information through the use of Plaintiff Chun's and the putative class members' names, photographs, identities, and personas is commercially valuable to Defendant, as it

enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

144.   Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Chun's name, photograph, identity, persona, and other personally identifying information appears alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

145.   Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Chun's name, photograph, identity, persona, and other personally identifying information appears alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes "for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services" within the meaning of the CRPL.

146.   Plaintiff Chun suffered mental anguish as a result of Defendant's unauthorized uses of his name, photograph, identity, and persona on the Website in the manner alleged herein.  Upon learning that his name, photograph, and other personally identifying information was being used by Defendant to advertise its products and services on the open market for its own financial gain, Plaintiff Chun became worried, frustrated, and concerned, disturbing his peace of mind in a

CLASS ACTION COMPLAINT

meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

### iii.    Plaintiff Ronesha Smith

147.    Plaintiff Smith is a resident of Chicago, Illinois.

148.    Plaintiff Smith has worked as a Brand Ambassador for Encore Nationwide, a Driver for Grubhub, and a Shopper for Instacart.

149.    Plaintiff Smith obtained an Associate's Degree from Colorado Technical University.

150.    Defendant has published a free-preview "profile" page on its Website which misappropriates Plaintiff Smith's name, photograph, identity, and persona to advertise subscriptions to Defendant's web-based platform.    An excerpt from that page appears in the following screenshot.[20]

---

[20] RocketReach, "Ronesha Smith Email & Phone Number | Encore Nationwide Brand Ambassador," available at https://rocketreach.co/ronesha-smith-email_73009049.

CLASS ACTION COMPLAINT



151.   Plaintiff Smith's name appears no less than 15 times on the free-preview "profile" page which misappropriates her name, photograph, identity, persona, and other personally identifying information.

152.   Defendant published this free-preview "profile" page for the sole purpose of advertising subscriptions to its platform.

153.   As shown above, the free-preview "profile" page misappropriating Plaintiff Smith's name, photograph, identity, and persona displays buttons encouraging visitors to "Sign Up" and to "View Ronesha's Email."  Clicking either

CLASS ACTION COMPLAINT

of those buttons brings users directly into the registration flow for Defendant's platform.

154.   Defendant has also published a free-trial "profile" page which misappropriates Plaintiff Smith's name, photograph, identity, and persona to advertise subscriptions to its web-based platform.

155.   The free-trial "profile" page misappropriating Plaintiff Smith's protected personal information displays her name, photograph, and other personally identifying information alongside a button to "Upgrade Now." Clicking this button brings visitors directly to a page presenting "Plans and Pricing" for subscriptions to Defendant's platform.

156.   The free-trial "profile" page misappropriating Plaintiff Smith's protected personal information displays her name, photograph, and other personally identifying information alongside buttons for "Healthcare" and "Intent," each which have lock icons next to them indicating they are unavailable to "free trial" users. Clicking on either of these buttons causes a message to be displayed which informs the "free trial" user that the feature is not available in his or her current plan and inviting the user to "upgrade" to a paid subscription.

157.   Plaintiff Smith never consented the use of her name, photograph, identity, or persona for use in Defendant's free-preview and free-trial "profile" pages promoting subscriptions to its platform.

158.   Plaintiff Smith values her right to control the commercial use of her name, photograph, identity, persona, and other personally identifying information.

159.   Plaintiff Smith's name, photograph, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's misappropriation of these protected personal attributes in advertising for its web-based subscription platform.

160.   Defendant benefits from its misappropriation of Plaintiff Smith's name, photograph, identity, persona, and other personally identifying information because its use of Plaintiff Smith's protected personal attributes in pages promoting subscriptions to its platform entices potential customers to purchase paid subscriptions to its platform.

161.   Additionally, the inclusion of Plaintiff Smith's and millions of other persons' protected personal attributes in free-preview and free-trial "profile" pages on Defendant's Website demonstrates the breadth of information available to Defendant's prospective customers.  Demonstrating this breadth of this information through the use of Plaintiff Smith's and the putative class members' names, photographs, identities, and personas is commercially valuable to Defendant, as it enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

162. Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Smith's name, photograph, identity, persona, and other personally identifying information appear alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

163. Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Smith's name, photograph, identity, persona, and other personally identifying information appears alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes "for commercial purposes" within the meaning of the IRPA.

164. Plaintiff Smith suffered mental anguish as a result of Defendant's unauthorized uses of her name, photograph, identity, and persona on the Website in the manner alleged herein. Upon learning that her name, photograph, and other personally identifying information was being used by Defendant to advertise its products and services on the open market for its own financial gain, Plaintiff Smith became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

CLASS ACTION COMPLAINT

### iv.     Plaintiff Heather Nicastro

165.    Plaintiff Nicastro is a resident of Cleveland, Ohio.

166.    Plaintiff Nicastro has worked as a Consultant and Tutor, as a Substitute Instructor at Polaris Career Center, and as a Special Education Paraprofessional at North Ridgeville City Schools.

167.    Plaintiff Smith graduated from Kendall College and Rausmassen College.

168.    Plaintiff Nicastro formerly lived in Brea, Ohio.

169.    Defendant has published a free-preview "profile" page on its Website which misappropriates Plaintiff Nicastro's name, identity, and persona to advertise subscriptions to Defendant's web-based platform.   An excerpt from that page appears in the following screenshot.[21]

---

[21] RocketReach, "Heather Nicastro Email & Phone Number | Early Childhood Education," available at https://rocketreach.co/heather-nicastro-email_44892232.

CLASS ACTION COMPLAINT



170.   Plaintiff Nicastro's name appears no less than 15 times on the free-preview "profile" page which misappropriates her name, identity, persona, and other personally identifying information.

171.   Defendant published this free-preview "profile" page for the sole purpose of advertising subscriptions to its platform.

172.   As shown above, the free-preview "profile" page misappropriating Plaintiff Nicastro's name, identity, and persona displays buttons encouraging visitors to "Sign Up" and to "View Heather's Email & Phone Number."  Clicking either of those buttons brings users directly into the registration flow for Defendant's platform.

173.   Defendant has also published a free-trial "profile" page which misappropriates Plaintiff Nicastro's name, identity, and persona to advertise subscriptions to its web-based platform.

174.   The free-trial "profile" page misappropriating Plaintiff Nicastro's protected personal information displays her name and other personally identifying information alongside a button to "Upgrade Now."  Clicking this button brings visitors directly to a page presenting "Plans and Pricing" for subscriptions to Defendant's platform.

175.   The free-trial "profile" page misappropriating Plaintiff Nicastro's protected personal information displays her name and other personally identifying information alongside buttons for "Healthcare" and "Intent," each which have lock icons next to them indicating they are unavailable to "free trial" users.  Clicking on either of these buttons causes a message to be displayed which informs the "free trial" user that the feature is not available in his or her current plan and inviting the user to "upgrade" to a paid subscription.

CLASS ACTION COMPLAINT

176.   Plaintiff Nicastro never consented the use of her name, identity, or persona for use in Defendant's free-preview and free-trial "profile" pages promoting subscriptions to its platform.

177.   Plaintiff Nicastro values her right to control the commercial use of her name, identity, persona, and other personally identifying information.

178.   Plaintiff Nicastro's name, identity, persona, and other personally identifying information has commercial value, as demonstrated by Defendant's misappropriation of these protected personal attributes in advertising for its web-based subscription platform.

179.   Defendant benefits from its misappropriation of Plaintiff Nicastro's name, identity, persona, and other personally identifying information because its use of Plaintiff Nicastro's protected personal attributes in pages promoting subscriptions to its platform entices potential customers to purchase paid subscriptions to its platform.

180.   Additionally, the inclusion of Plaintiff Nicastro's and millions of other persons' protected personal attributes in free-preview and free-trial "profile" pages on Defendant's Website demonstrates the breadth of information available to Defendant's prospective customers.  Demonstrating this breadth of this information through the use of Plaintiff Nicastro's and the putative class members' names, photographs, identities, and personas is commercially valuable to Defendant, as it

enhances the formidability of Defendant's brand in the eyes of would-be purchasers of Defendant's products and services.

181.  Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Nicastro's name, photograph, identity, persona, and other personally identifying information appear alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes for purposes of advertising products, merchandise, goods, or services in violation of the WPRA.

182.  Defendant's creation, publication, and dissemination of the free-preview and free-trial "profile" pages on which Plaintiff Nicastro's name, identity, persona, and other personally identifying information appears alongside promotions for subscriptions to Defendant's platform constitute separate "uses" of these attributes "commercial purposes," including for "advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter" within the meaning of the ORPIPA.

183.  Plaintiff Nicastro suffered mental anguish as a result of Defendant's unauthorized uses of her name, photograph, identity, and persona on the Website in the manner alleged herein.  Upon learning that her name, photograph, and other personally identifying information was being used by Defendant to advertise its products and services on the open market for its own financial gain, Plaintiff

Nicastro became worried, frustrated, and concerned, disturbing her peace of mind in a meaningful way—just as would occur to any reasonable person under the same or similar circumstances.

## CLASS ACTION ALLEGATIONS

184.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiffs Sant, Chun, Smith, and Nicastro bring this action, on behalf of themselves and members of the "Nationwide Free-Preview Class," defined as follows:

> All natural persons residing in the United States for whom Defendant established a free-preview "profile" page on www.rocketreach.co.

185.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiffs Sant, Chun, Smith, and Nicastro bring this action, on behalf of themselves and members of the "Nationwide Free-Trial Class," defined as follows:

> All natural persons residing in the United States for whom Defendant established a free-trial "profile" page on www.rocketreach.co.

186.    The Nationwide Free-Preview Class and the Nationwide Free-Trial Class are collectively referred to as the "Nationwide Classes."

187.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Sant brings this action, on behalf

of himself and members of the "Washington Free-Preview Class," defined as follows:

>All natural persons residing in the state of Washington for whom Defendant established a free-preview "profile" page on www.rocketreach.co.

188.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Sant brings this action, on behalf of himself and members of the "Washington Free-Trial Class," defined as follows:

>All natural persons residing in the state of Washington for whom Defendant established a free-trial "profile" page on www.rocketreach.co.

189.    The Washington Free-Preview Class and the Washington Free-Trial Class are collectively referred to as the "Washington Classes."

190.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Chun brings this action, on behalf of himself and members of the "California Free-Preview Class," defined as follows:

>All natural persons residing in California for whom Defendant established a free-preview "profile" page on www.rocketreach.co.

191.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Chun brings this action, on behalf of himself and members of the "California Free-Trial Class," defined as follows:

CLASS ACTION COMPLAINT

> All natural persons residing in California for whom Defendant established a free-trial "profile" page on www.rocketreach.co.

192. The California Free-Preview Class and the California Free-Trial Class are collectively referred to as the "California Classes."

193. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Smith brings this action, on behalf of herself and members of the "Illinois Free-Preview Class," defined as follows:

> All natural persons residing in Illinois for whom Defendant established a free-preview "profile" page on www.rocketreach.co.

194. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Smith brings this action, on behalf of herself and members of the "Illinois Free-Trial Class," defined as follows:

> All natural persons residing in Illinois for whom Defendant established a free-trial "profile" page on www.rocketreach.co.

195. The Illinois Free-Preview Class and the Illinois Free-Trial Class are collectively referred to as the "Illinois Classes."

196. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Nicastro brings this action, on behalf of herself and members of the "Ohio Free-Preview Class," defined as follows:

CLASS ACTION COMPLAINT

> All natural persons residing in Ohio for whom Defendant established a free-preview "profile" page on www.rocketreach.co.

197. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff Nicastro brings this action, on behalf of herself and members of the "Ohio Free-Trial Class," defined as follows:

> All natural persons residing in Ohio for whom Defendant established a free-trial "profile" page on www.rocketreach.co.

198. The Ohio Free-Preview Class and Ohio Free-Trial Class are collectively referred to as the "Ohio Classes."

199. The Nationwide Classes, California Classes, Illinois Classes, and Ohio Classes are at times collectively referred to herein as the "Classes."

200. Excluded from the Classes are any persons who have purchased subscriptions, goods, or services from www.rocketreach.co.

201. Excluded from the Classes are any persons who have or had a subscription (whether a paid or a free-trial subscription) to www.rocketreach.co.

202. Excluded from the Classes are Defendants' officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Also excluded from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

203.   Plaintiffs reserve the right to modify the definitions of the Classes, including based on discovery and further investigation.

204.   The members of each of the Classes are so numerous that their individual joinder herein is impracticable.  Plaintiffs are informed and believe, and thereupon allege, that the members of each of the Classes number in the millions. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but will be readily determined in discovery, including by reference to Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

205.   Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent in that Plaintiffs and all members of the Classes were injured and sustained damages by Defendant's uniform wrongful conduct—namely, Defendant's practices of using Plaintiffs' and the Classes' names, identities, personas and other personally identifying information to advertise, sell, and promote, and to solicit sales of subscriptions to its platform and other products and services, without any of their consent.

206.   Common questions of law and fact exist as to all members of each of the Classes and predominate over questions affecting only individual members. Legal and factual questions common to the Classes include, but are not limited to:

a.   Whether Defendant engaged in the alleged conduct;

CLASS ACTION COMPLAINT

b. Whether Defendant knowingly used the names, photographs, identities, personas, and personally identifying information of the members of the Classes;

c. Whether Defendant used their names, photographs, identities, personas, and other personally identifying information for the purposes of advertising products, merchandise, goods, or services;

d. Whether Defendant had their consent to use their names, photographs, identities, personas, and personally identifying information in this way;

e. Whether members of the Classes are entitled to recover statutory damages;

f. Whether members of the Classes are entitled to equitable relief, including injunctive relief.

207. Plaintiffs are adequate representatives of the Classes because none of the Plaintiffs' interests conflict with the interests of the other members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

208. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual

CLASS ACTION COMPLAINT

member of the Classes may lack the resources to undergo the burden and expense

of individual prosecution of the complex and extensive litigation necessary to

establish Defendant's liability.  Individualized litigation increases the delay and

expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the

class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court on the issue of Defendant's liability.  Class treatment of the

liability issues will ensure that all claims and claimants are before this Court for

consistent adjudication of such issues.

## FIRST CLAIM FOR RELIEF
**Violation of Washington's Personality Rights Act, RCW 63.60.050**
**(By All Plaintiffs, Individually and On Behalf of the Nationwide Classes)**

209.    Plaintiffs Sant, Chun, Smith, and Nicastro, on behalf of themselves and

the Nationwide Classes, repeat the allegations contained in the foregoing paragraphs

as if fully set forth herein.

210.    Plaintiffs are "living . . . individual[s]" and thus "individual[s]" within

the meaning of the WPRA.  *See* RCW 63.60.

211.  Defendant is a corporation and thus a juristic "person" within the

meaning of the WPRA.  *See id.*

CLASS ACTION COMPLAINT

212.   During the time period relevant to this action, Defendant publicly used the names and other personally identifying attributes of Plaintiffs and the members of the Nationwide Classes in the manner alleged herein, including by using such names, photographs, identities, personas, and other personally identifying information on free-preview and free-trial "profile" pages and other pages that it established and promoted for each of these individuals.

213.   Defendant used and held out Plaintiffs' and the Nationwide Classes members' names, photographs, identities, personas, and other personally identifying information in the manner alleged herein for the purposes of advertising subscriptions to its www.rocketreach.co platform.

214.   The free-preview and free-trial "profile" pages and other pages that Defendant established for Plaintiffs and each of the Nationwide Classes members were, at all times relevant hereto, publicly accessible to the public at large, and in fact were designed and intended by Defendant to be accessed and viewed by as many members of the public as possible, with the aim of converting prospective customers into paying subscribers to Defendant's www.rocketreach.co platform.

215.   Defendant has published and disseminated the free-preview and free-trial "profile" pages in Washington state.  Defendant has done so from its principal place of business, which is located in Washington state.

CLASS ACTION COMPLAINT

216.   Defendant's use of Plaintiffs' and the Nationwide Classes members' names, photographs, identities, and personally identifying information on free-preview and free-trial "profile" pages constitutes "advertising" within the meaning of the WPRA.  *See* RCW 63.60.050.

217.   Subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, or services" within the meaning of the WPRA.  *See id*.

218.   Prior to using and holding out Plaintiffs' and the Nationwide Classes members' names, photographs, identities, personas, and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiffs nor any member of the Nationwide Classes that it would do so, and neither Plaintiffs nor any member of the Nationwide Classes has ever consented (in writing or otherwise) to Defendant doing so.

219.   By using Plaintiffs' and the Nationwide Classes members' names, photographs, identities, personas, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiffs' and the Nationwide Classes members' rights of publicity in violation of the WPRA.

CLASS ACTION COMPLAINT

220.   Significant commercial value exists in the aspects of Plaintiffs' and the other Nationwide Classes members' names and identities that Defendant used and continues to use in the manner alleged herein.

221.   Defendant's use of Plaintiffs' and the Nationwide Classes members' names, photographs, identities, personas, and other personally identifying information in in free-preview and free-trial "profile" pages and other pages was not incidental.  On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers to its web-based platform.  This is demonstrated by the sheer volume of free-preview and free-trial "profile" pages created by Defendant and Defendant's optimization of these pages to rank highly in search engine results.

222.   On behalf of themselves and the Nationwide Classes, Plaintiffs seek: (1) an injunction requiring Defendant to obtain written consent from class members prior to the use of their names and identities to advertise products or services pursuant to RCW 63.60.060; (2) $1,500.00 in statutory liquidated damages to Plaintiffs and each Nationwide Classes members for each infringement of their rights under the WPRA pursuant to RCW 63.60.060; and (3) costs and reasonable attorneys' fees pursuant to RCW 63.60.060.

CLASS ACTION COMPLAINT

## SECOND CLAIM FOR RELIEF
**Violation of Washington's Personality Rights Act, RCW 63.60.050**
**(By Plaintiff Sant, Individually and On Behalf of the Washington Classes)**

223.    Plaintiff Sant, on behalf of himself and the Washington Classes, repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

224.    Plaintiff Sant is a "living . . . individual" and thus an "individual" within the meaning of the WPRA.  *See* RCW 63.60.

225.    Defendant is a corporation and thus a juristic "person" within the meaning of the WPRA.  *See id*.

226.    During the time period relevant to this action, Defendant publicly used the names and other personally identifying attributes of Plaintiff Sant and the members of the Washington Classes in the manner alleged herein, including by using such names, photographs, identities, personas, and other personally identifying information on free-preview and free-trial "profile" pages and other pages that it established and promoted for each of these individuals.

227.    Defendant used and held out Plaintiff Sant's and the Washington Classes members' names, photographs, identities, personas, and other personally identifying information in the manner alleged herein for the purposes of advertising subscriptions to its www.rocketreach.co platform.

228.    The free-preview and free-trial "profile" pages and other pages that Defendant established for Plaintiff Sant and each of the Washington Classes

CLASS ACTION COMPLAINT

members were, at all times relevant hereto, publicly accessible to the public at large, and in fact were designed and intended by Defendant to be accessed and viewed by as many members of the public as possible, with the aim of converting prospective customers into paying subscribers to Defendant's www.rocketreach.co platform.

229.   Defendant has published and disseminated the free-preview and free-trial "profile" pages in Washington state.  Defendant has done so from its principal place of business, which is located in Washington state.

230.   Defendant's use of Plaintiff Sant's and the Washington Classes members' names, photographs, identities, and personally identifying information on free-preview and free-trial "profile" pages constitutes "advertising" within the meaning of the WPRA.  *See* RCW 63.60.050.

231.   Subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, or services" within the meaning of the WPRA.  *See id.*

232.   Prior to using and holding out Plaintiff Sant's and the Washington Classes members' names, photographs, identities, personas, and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Sant nor any member of the Washington Classes

that it would do so, and neither Plaintiff Sant nor any member of the Washington Classes has ever consented (in writing or otherwise) to Defendant doing so.

233.   By using Plaintiff Sant's and the Washington Classes members' names, photographs, identities, personas, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff Sant's and the Washington Classes members' rights of publicity in violation of the WPRA.

234.   Significant commercial value exists in the aspects of Plaintiff Sant's and the other Washington Classes members' names and identities that Defendant used and continues to use in the manner alleged herein.

235.   Defendant's use of Plaintiff Sant's and the Washington Classes members' names, photographs, identities, personas, and other personally identifying information in in free-preview and free-trial "profile" pages and other pages was not incidental.  On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers to its web-based platform.  This is demonstrated by the sheer volume of free-preview and free-trial "profile" pages created by Defendant and Defendant's optimization of these pages to rank highly in search engine results.

236.   On behalf of himself and the Washington Classes, Plaintiff Sant seeks: (1) an injunction requiring Defendant to obtain written consent from class members

CLASS ACTION COMPLAINT

prior to the use of their names and identities to advertise products or services pursuant to RCW 63.60.060; (2) $1,500.00 in statutory liquidated damages to Plaintiff Sant and each Washington Classes member for each infringement of their rights under the WPRA pursuant to RCW 63.60.060; and (3) costs and reasonable attorneys' fees pursuant to RCW 63.60.060.

### **THIRD CLAIM FOR RELIEF**
**Violation of the California Right of Publicity Law, Cal. Civ. Code § 3344**
**(By Plaintiff Chun, Individually and On Behalf of the California Classes)**

237.   Plaintiff Chun, individually and on behalf of the California Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

238.   Defendant is a corporation and thus a juristic "person" within the meaning of the CRPL.   *See* Cal. Civ. Code § 3344(a)(1).

239.   During the time period relevant to this action, Defendant publicly used the name and other personally identifying attributes of Plaintiff Chun and the members of the California Classes in the manner alleged herein, including by using such names, photographs, identities, and other personally identifying information on free-preview and free-trial "profile" pages and other pages to advertise subscriptions to its platform.

240.   Defendant's use of Plaintiff Chun's and the California Classes members' names, photographs, identities, and personally identifying information on

CLASS ACTION COMPLAINT

free-preview and free-trial "profile" pages to advertise paid subscriptions to its platform constitutes separate "uses" "for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services" within the meaning of the CRPL. *See* Cal. Civ. Code § 3344(a)(1).

241.    Subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, or services" within the meaning of the CRPL. *See id*.

242.    Defendant has published and disseminated the free-preview and free-trial "profile" pages in California.

243.    Prior to using and holding out Plaintiff Chun's and the California Classes members' names, photographs, and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Chun nor any member of the California Classes that it would do so, and neither Plaintiff Chun nor any member of the California Classes has ever consented (in writing or otherwise) to Defendant doing so.

244.    By using Plaintiff Chun's and the California Classes members' names, photographs, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon

CLASS ACTION COMPLAINT

Plaintiff Chun's and the California Classes members' rights of publicity in violation of the CRPL.

245.   Plaintiff Chun suffered mental anguish as a result of Defendant's unauthorized uses of his name, photograph, identity, and other personally identifying information in the manner alleged herein.   Upon learning that his name, photograph, identity, and other personal details were being used by Defendant to sell its products and services on the open market for its own financial gain, Plaintiff Chun became worried, frustrated, and concerned, disturbing his peace of mind in a meaningful way—just as would occur to any reasonable person (including members of the California Classes) under the same or similar circumstances.

246.   Significant commercial value exists in the aspects of Plaintiff Chun's and the other California Classes members' names, photographs, and identities that Defendant used and continues to use in the manner alleged herein.

247.   Defendant's use of Plaintiff Chun's and the California Classes members' names, photographs, identities, and other personally identifying information in free-preview and free-trial "profile" pages and other pages to advertise subscriptions to platform was not incidental.   On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers.   This is demonstrated by the sheer volume of free-preview and free-trial

CLASS ACTION COMPLAINT

"profile" pages and other pages used to advertise subscriptions to Defendant's platform.

248.   On behalf of himself and the California Classes, Plaintiff Chun seeks: (1) an injunction requiring Defendant to obtain prior consent from the California Classes members prior to the use of their names, photographs, and identities to advertise products or services; (2) $750.00 in statutory liquidated damages to Plaintiff Chun and each member of the California Classes for each infringement of their rights under the CRPL; and (3) costs and reasonable attorneys' fees.   *See* Cal. Civ. Code § 3344(a)(1).

## <u>FOURTH CLAIM FOR RELIEF</u>
### Violation of the Illinois Right of Publicity Act, 765 ILCS 1075
### (By Plaintiff Smith, Individually and On Behalf of the Illinois Classes)

249.   Plaintiff Smith, individually and on behalf of the Illinois Classes, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

250.   Defendant is a corporation and thus a juristic "person" within the meaning of the IRPA.   *See* 765 ILCS 1075/5.

251.   During the time period relevant to this action, Defendant publicly used the names, photographs, identities, and other personally identifying attributes of Plaintiff Smith and the members of the Illinois Classes in the manner alleged herein, including by using such names, photographs, identities, and other personally

identifying information on free-preview and free-trial "profile" pages to advertise subscriptions to its platform and related products and services.

252.  Defendant's use of Plaintiff Smith's and the Illinois Classes members' names, photographs, identities, and personally identifying information on free-preview and free-trial "profile" pages to advertise subscriptions to its platform constitutes a "use" or "holding out" of those identities "in connection with the offering for sale or sale of a product, merchandise, goods, or services" or "for purposes of advertising or promoting products, merchandise, goods, or services" within the meaning of "commercial purposes" as it is defined in the IRPA. *See* 765 ILCS 1075/5.

253.  Subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "product, merchandise, goods, or services" within the meaning of the IRPA. *See id.*

254.  Defendant has published and disseminated the free-preview and free-trial "profile" pages in Illinois.

255.  Prior to using and holding out Plaintiff Smith's and the Illinois Classes members' names, photographs, and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Smith nor any member of the Illinois Classes that it would do so, and neither Plaintiff

Smith nor any member of the Illinois Classes has ever consented (in writing or otherwise) to Defendant doing so.

256.   By using Plaintiff Smith's and the Illinois Classes members' names, photographs, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff Smith's and the Illinois Classes members' rights of publicity in violation of the IRPA.

257.   Significant commercial value exists in the aspects of Plaintiff Smith's and the other Illinois Classes members' names, photographs, and identities that Defendant used and continues to use in the manner alleged herein.

258.   Defendant's use of Plaintiff Smith's and the Illinois Classes members' names, photographs, identities, and other personally identifying information in free-preview and free-trial "profile" pages to advertise subscriptions to its platform and related products and services was not incidental.  On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers.  This is demonstrated by the sheer volume of free-preview and free-trial "profile" pages used to advertise subscriptions to Defendant's platform.

259.   On behalf of herself and the Illinois Classes, Plaintiff Smith seeks: (1) an injunction requiring Defendant to obtain prior consent from the Illinois Classes members prior to the use of their names, photographs, and identities to advertise

products or services; (2) $1,000.00 in statutory liquidated damages to Plaintiff Smith and each Illinois Classes member for each infringement of their rights under the IRPA; and (3) costs and reasonable attorneys' fees. *See* 765 ILCS 1075/40; 765 ILCS 1075/50.

## FIFTH CLAIM FOR RELIEF
### Violation of the Ohio Right of Publicity in Individual's Persona Act, Ohio Rev. Code Ann. § 2741.
### (By Plaintiff Nicastro, Individually and On Behalf of the Ohio Classes)

260.   Plaintiff Nicastro, individually and on behalf of the Ohio Classes, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

261.   Defendant is a corporation and thus a juristic "person" within the meaning of the IRPA.   *See* Ohio Rev. Code Ann. § 2741.02(A).

262.   Plaintiff Nicastro is known by, clearly identified by, and referred to by the name "Heather Nicastro," which is her "name" within the meaning of ORPIPA. *See* Ohio Rev. Code Ann. § 2741.01(C).

263.   During the time period relevant to this action, Defendant publicly used the names, identities, personas, and other personally identifying attributes of Plaintiff Nicastro and the Ohio Classes members in the manner alleged herein, including by using such names, identities, personas, and other personally identifying information on free-preview "profile" pages and other pages to advertise subscriptions to its platform.

CLASS ACTION COMPLAINT

264.  Defendant's use of Plaintiff Nicastro's and the Ohio Classes members' names, identities, and personally identifying information on free-preview and free-trial "profile" pages to advertise subscriptions to its platform was for the purpose of advertising or soliciting the purchase of products, merchandise, goods, services and therefore constituted a "commercial purpose."  *See* Ohio Rev. Code Ann. § 2741.01(B)(2).

265.  Subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and related products and services, constitute "products, merchandise, goods, services" within the meaning of the ORPIPA.  *See id*.

266.  Defendant has published and disseminated the free-preview and free-trial "profile" pages in Ohio.

267.  Prior to using and holding out Plaintiff Nicastro's and the Ohio Classes members' names and other personally identifying information for commercial purposes in the manner alleged herein, Defendant did not notify Plaintiff Nicastro nor any member of the Ohio Classes that it would do so, and neither Plaintiff Nicastro nor any member of the Ohio Classes has ever consented (in writing or otherwise) to Defendant doing so.

268.  By using Plaintiff Nicastro's and the Ohio Classes members' names, identities, and other personally identifying information to advertise its products and

CLASS ACTION COMPLAINT

services, without their prior consent, Defendant infringed upon Plaintiff Nicastro's and the Ohio Class members' rights of publicity in violation of the ORPIPA.

269.    Significant commercial value exists in the aspects of Plaintiff Nicastro's and the other Ohio Classes members' names and identities that Defendant used and continues to use in the manner alleged herein.

270.    Defendant's use of Plaintiff Nicastro's and the Ohio Class members' names, identities, and other personally identifying information in free-preview and free-trial "profile" pages to advertise subscriptions to its platform was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers.  This is demonstrated by the sheer volume of free-preview and free-trial "profile" pages and other pages used to advertise subscriptions to Defendant's platform.

271.    On behalf of herself and the Ohio Classes, Plaintiff Nicastro seeks: (1) an injunction requiring Defendant to obtain prior consent from the Ohio Cass members prior to the use of their names and identities to advertise products or services; (2) $2,500.00 in statutory liquidated damages to Plaintiff Nicastro and each Ohio Classes member for each infringement of their rights under the ORPIPA; (3) costs and reasonable attorneys' fees.  *See* Ohio Rev. Code Ann. § 2741.07.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of the members of the Classes, as follows:

A.    For an order certifying the Classes pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs as representatives of the Classes and Plaintiffs' undersigned attorneys as counsel to represent the Classes;

B.    For an order entering judgment in favor of the Plaintiffs and the members of the Classes on all claims for relief stated herein;

C.    For an order awarding Plaintiffs and the members of the Classes actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in the amounts set by statute or to be proven at trial;

D.    For an order for appropriate injunctive relief;

E.    For an order awarding pre- and post-judgment interest according to law; and

F.    For an award of attorneys' fees, costs and expenses to Plaintiffs' counsel.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and members of the Classes, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

CLASS ACTION COMPLAINT

Dated: October 8, 2024

Respectfully submitted,

By: /s/    Nick Major

**NICK MAJOR LAW**
NICK MAJOR
450 Alaskan Way S. #200
Seattle, WA 98104
Telephone: (206) 410-5688
E-Mail: nick@nickmajorlaw.com

**HEDIN LLP**
TYLER K. SOMES*
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3331
E-Mail: tsomes@hedinllp.com

* Pro Hac Vice Application Forthcoming

*Counsel for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT