UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH SANT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ROCKETREACH LLC, <br><br> Defendants. | Case No. C24-1626-RSM <br><br> ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS AND STRIKE CLASS ALLEGATIONS |

## I. INTRODUCTION

This matter comes before the Court on Defendant RocketReach LLC's Motions to Dismiss and to Strike Class Allegations, Dkts. #18 and #19. Plaintiffs Joseph Sant, Merton Chun, Ronesha Smith, and Heather Nicastro oppose. Dkts. #25 and #27. For the reasons below, the Court DENIES these Motions.

## II. BACKGROUND

The Court draws the following facts and allegations from Plaintiffs' Complaint, Dkt. #1. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant's "world's largest and most accurate database," www.rocketreach.co, offers a web-based subscription platform for users to access millions of profiles that contain people's personal and professional information, as well as other business development services. When a

user navigates the site, they may see free-preview and free-trial "profile" pages, which provide the name, place of work, education history, skills, and other personal information of a specific person. These profile pages include links to obtain further information on the person, which direct users to subscription options for premium features on the platform, such as Autopilot, Intent Data, and RocketReach for Healthcare. Defendant optimizes the free profile pages to rank highly in search engine results through source code, employing specific people to develop these techniques. Defendant tracks the number of times when and from where these free profile pages are viewed by non-subscribers. Plaintiffs allege:

> Defendant has built and now reaps significant profit from this business by trading off the names, photographs, personas, and identities of millions of Americans to promote its platform, without obtaining their consent or providing them compensation of any kind.
>
> Defendant has done this by publishing millions of free-preview and free-trial "profile" pages which use the names, photographs, email addresses, phone numbers, physical address, employers, educational history, and more about individual Americans to advertise subscriptions to its web-based platform.

Dkt. #1 at ¶¶

Plaintiffs Joseph Sant (a Washington resident), Merton Chun (a California resident), Ronesha Smith (an Illinois Resident), and Heather Nicastro (an Ohio resident), whose private information appears on Defendant's free-preview and free-trial profile pages, filed their class action Complaint against Defendant on October 8, 2024. They bring claims under the Washington Personality Rights Act ("WPRA"), RCW 63.60.050, the California Right of Publicity Law ("CRPL"), Cal. Civ. Code § 3344, the Illinois Right of Publicity Act ("IRPA"), 765 Ill. Comp. Stat. 1075, and the Ohio Right of Publicity in Individual's Persona Act ("ORPIPA"), Ohio Rev. Code Ann. § 2741.

On December 27, 2024, Defendants filed a Motion to Compel Arbitration and Stay Proceedings, Dkt. #16, and the instant Motions to Dismiss, Dkt. #18, and to Strike Class

Allegations, Dkt. #19. The Court denied Defendant's Motion to Compel Arbitration on July 7, 2025. Dkt. #25.

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant requests that the Court dismiss Plaintiff's claims for lack of standing and failure to state a claim. Dkt. #18.

**1. Legal Standard**

    **a. Standing**

Pursuant to Article III of the US. Constitution, federal courts have limited jurisdiction to hear only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (192); U.S. CONST. art III, § 2. Accordingly, "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). To satisfy the case-or-controversy requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). When a plaintiff lacks standing, dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317-18 (W.D. Wash. 2014).

A motion to dismiss under Rule 12(b)(1) can attack the factual allegations establishing standing or can attack plaintiff's standing facially. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "The district court resolves a facial attack as it would a motion to dismiss under 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in

the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id*. at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). At the pleading stage, a plaintiff need not satisfy *Iqbal/Twombly's*[1] plausibility standard but "must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). As such, the inquiry does not touch directly on the merits of the plaintiff's case. *See Maya*, 658 F.3d at 1068 (contrasting with consideration of a Rule 12(b)(6) motion which "necessarily assesses the merits of the plaintiff's case"). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

    **b. Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of

---

[1] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**2. Analysis**

**a. Standing**

Defendant challenges Plaintiffs' standing based on lacking an injury in fact and causality. Dkt. #18 at 5-11. In Response, Plaintiffs identify injuries related to: (1) misappropriation of Plaintiffs' likenesses, names, and information; (2) Defendant unjustly profiting from this use; (3) the denial of Plaintiffs' rights to control the commercial use of their information; (4) invasion of privacy; and (5) mental anguish. Dkt. #25 at 9-14. Regarding causality, "Plaintiffs [sic] allege that their injuries were directly caused by Defendant's publication and dissemination of the pages containing their names, images, and identities . . . [which] would be cured by Defendant's removal of the offending materials from [the] internet." *Id*. at 16.

The Court finds that Plaintiffs have established standing. Though some courts in this circuit have found otherwise, "[c]ourts in this district [the Northern District of California and other Ninth Circuit courts] have overwhelmingly found that plaintiffs in similar circumstances had sufficiently pleaded a cognizable injury." *Spindler v. Seamless Contacts, Inc.*, 2022 WL 16985678, at *4 (N.D. Cal. Oct. 24, 2022); *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889-90 (N.D. Cal. 2022) (finding that, although some courts rejected similar theories of injury, other courts found injuries-in-fact under similar factual circumstances); *Carrera, et al., v. Whitepages, Inc.*, No. 2:24-CV-01408-JHC, 2025 WL 1796574 (W.D. Wash. June 30, 2025)

(holding that the use of accurate and publicly available information through free-preview profile pages is a cognizable harm under Article III). Plaintiffs allege injuries-in-fact and sufficiently allege a causal link to Defendant: *i.e.*, Defendant posting Plaintiff's information and likenesses on its website without authorization and profiting from this use. Accordingly, the Court will deny Defendant's Motion pursuant to Rule 12(b)(1).

### b. Failure to State Claims

#### i. Washington Personality Rights Act Claims

Defendant argues that Plaintiffs' First and Second Claims for relief, violations of the WPRA, fail because the alleged use is exempt under the statute because it is "insignificant, de minimis, or incidental" and "accurately describes the good or services" Defendant offers. Dkt. #18 at 13 and 16.

The WPRA establishes property rights for "[e]very individual or personality . . . in the use of his or her name, voice, signature, photograph, or likeness." RCW 63.60.010. Infringement is described as:

> Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right. An infringement may occur under this section without regard to whether the use or activity is for profit or not for profit.

RCW 63.60.050.

However, the WPRA allows for some exemptions, including if the use of any of the above "is merely descriptive and used fairly and in good faith only to identify or describe something other than the individual or personality" or "is an insignificant, de minimis, or incidental use." RCW 63.60.070(5)-(6).

First, Defendant argues that the alleged use of Plaintiffs' information is exempt because it is "insignificant, de minimis, or incidental because Plaintiffs are four individuals out of hundreds of millions in RocketReach's database." Dkt. #18 at 13. Defendant argues that this use of "[f]our out of 700 million profiles" does not contribute significantly to Defendant's profits or add any "unique quality" or "value." *Id*. at 13-14. Defendant contends that "Plaintiffs do not allege, nor could they, that the use of their personal information stands out prominently or enhances the marketability of Defendant's product or service." *Id*. at 14. However, Plaintiffs allege that Defendant's use of their information "was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers to its web-based platform." Dkt #1, ¶¶ 221, 235, 247, 258, and 270. This is supported by Defendant's use of numerous "free-preview" and "free-trial 'profile' pages" and Defendant's "optimization" of these free-preview profiles "with source code which maximizes its visibility on internet search engines." *Id*. at ¶¶ 3-7, 14, 48-49, 52, 61-72, 77, 79-82, 86, 88-90, and 101. "Courts considering similar allegations have held that they could show non-incidental use." *Whitepages, Inc.*, 2025 WL 1796574, at *6 (citing *LaRock v. ZoomInfo Techs. LLC*, 2025 WL 1345264, at *3 (collecting cases)). Accordingly, the Court finds that, at this stage, Plaintiffs have stated a WPRA claim alleging non-incidental use.

Second, Defendant provides a single sentence to argue that the "merely descriptive" exemption applies because "these profiles are a use of an individual's name that is merely descriptive and used fairly and in good faith only to identify or describe RocketReach's services, including access to more information in its database." Dkt. #18 at 16.

The Court is unpersuaded by Defendant's argument because "it is plausible at this stage that [Defendant's] nonconsensual use of Plaintiffs' information is not in 'good faith'" or just describing Defendant's services, not the individuals. *Whitepages, Inc.*, 2025 WL 1796574, at

ORDER DENYING DEFENDANT'S
MOTIONS TO DISMISS AND STRIKE - 7

*6. Furthermore, Plaintiffs allege other instances of use, including using Plaintiffs' profile pages to advertise its profile and Healthcare subscription services. Dkts. #1 at ¶¶ 100, 121, 138, 156, and 175. These allegations go beyond being "merely descriptive" uses of Defendant's services. *See LaRock*, 2025 WL 1345254, at *2-3 (holding that the use of Plaintiff's name for other services beyond the free profiles shows use other than "merely descriptive"); *Whitepages, Inc.*, 2025 WL 1796574, at *6 (finding "that Whitepages premium, while a 'service' providing information about Plaintiffs, is not "something other than the individual or personality"). Accordingly, the Court finds that Plaintiffs state claims under the WPRA and denies Defendant's Motion based on these exceptions.

### ii. Plaintiff Chun's California Right of Publicity Law Claim

Defendant argues that Plaintiff Chun fails to state a CRPL claim because (1) "he does not plausibly allege appropriation of his name or likeness to Defendant's advantage[;]" (2) the alleged use is exempt as incidental; and (3) his required pleadings of mental harm are "conclusory and not plausible." Dkt. #18 at 16-19.

California's Right of Publicity Law provides that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products . . . or soliciting the purchases of . . . without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a). § 3344 requires a plaintiff to allege "a knowing use by the defendant" and to show that the use "was so directly connected with the commercial sponsorship or with paid advertising as to constitute a use for which consent is required[.]" Cal. Civ. Code  § 3344(a) and (e). This statute allows a plaintiff to recover "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use." Cal. Civ. Code § 3344(a). As California courts have consistently held, plaintiffs must claim mental

ORDER DENYING DEFENDANT'S
MOTIONS TO DISMISS AND STRIKE - 8

harm or anguish because, historically, the "minimum statutory damages under section 3344 were meant to compensate mental anguish," meaning "injury to the feelings." *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1242-43 (N.D. Cal. 2014) (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal.App.4th 988, 1002 (2008) and describing the court and legislative history of this requirement).

Furthermore, "California's statutory right of publicity 'complement[s]' the common law right of publicity but 'neither replaces nor codifies the common law cause of action.'" *Id*. at 1242 (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691-92 (9th Cir. 1998)). Thus, to state a claim under § 3344(a), a plaintiff must allege the common law elements of "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

First, Defendant relies on *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *13-14 (N.D. Cal. Aug. 16, 2021), to assert that Plaintiff Chun cannot state a claim under the CPRL where he simply alleges that the use of his information is for a product that "is [his] name, likeness, and personal information[,]" not a separate product. Dkt. #18 at 18. However, as the Court in *Whitepages, Inc.*, similarly held, Plaintiff Chun's allegations differ from *Brooks* in that Defendant used his information "on free-preview and free-trial 'profile' pages and other pages to advertise subscriptions to its platform." Dkt. #1 at ¶ 239; *see Whitepages, Inc.*, at *10. Furthermore, "later decisions in the Northern District of California and elsewhere have rejected such a [separate product] requirement . . . . Because the CPRL covers use of a plaintiff's information in a product, it does not have a separate product requirement." *Whitepages, Inc.*, at *10-11 (citing *Spindler*, 2022 WL 16985678, at *5; and *Wallen v. Consumer Reps., Inc.*, 2022

WL 17555723, at *3-4 (S.D.N.Y. Dec. 9, 2022) (citing *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 902 (Cal. 2001)). Given the above, the Court is unpersuaded by this argument.

Second, Defendant argues that the alleged use is exempt under the doctrine of incidental use. Dkt. #18 at 18-19. Defendant contends that Plaintiff Chun's information does not prominently stand out or enhance Defendant's product or service marketability, and the relationship between the two is incidental because he is one of millions of profiles only mentioned here because "Plaintiff Chun or his attorneys have searched for him" to include a screenshot in the Complaint. *Id*.

"[T]o assess whether a use is merely 'incidental,' courts have considered '(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication.'" *Spindler* at *5 (quoting *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015)).

The Court found Defendant's similar argument regarding the WPRA claims equally unpersuasive. *See* Section B.2.A., *supra*. Plaintiff Chun alleges that Defendant uses his personal information on a free-preview profile to advertise subscriptions that allow you to access more information on Plaintiff Chun. This is done by clicking buttons, such as "View Merton's [Chun] Email & Phone Number (It's Free)," that "bring[] users directly into the registration flow for Defendant's platform" and other pay-for-upgrade subscription options. Dkt. #1 at ¶¶ 132-138. It is plausible that Defendant generates profit through the use of Plaintiff Chun's profile, and there is a direct, nonincidental relationship between Plaintiff Chun's information and Defendant's products.

Finally, Defendant argues that Plaintiff Chun fails to sufficiently plead a mental injury because "his allegations of mental anguish are conclusory and not plausible." Dkt. #18 at 19. However, Plaintiff Chun alleges that he "became worried, frustrated, and concerned, disturbing his peace of mind in a meaningful way" upon learning of Defendant's actions, and Defendant makes this contention with no citations or other authority. Dkt. #1 at ¶¶ 146 and 245; *see Whitepages, Inc.*, 2025 WL 1796574, at *12 (holding that plaintiff satisfied this requirement by alleging she "became worried, frustrated, and concerned" about her personal information being for financial gain). Accordingly, the Court finds that Plaintiff Chun has stated a claim under the CPRL.

### iii. Plaintiff Smith's Illinois Right of Publicity Act Claim

Defendant argues that Plaintiff Smith's IRPA claim fails because her profile "merely provides a preview of the thing that can be viewed by creating an account," which is not a "commercial purpose" under the statute.

The IRPA defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 Ill. Comp. Stat. 1075/5.

Defendant relies on *Thompson v. Getty Images (US), Inc.*, which holds that "the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself." No. 13 C 1063, 2013 WL 3321612, at *5 (N.D. Ill. July 1, 2013); Dkt. #18 at 20.[2] This case is clearly distinguishable because the issue in *Getty Images* was the

---

[2] The Court notes that Defendant's citation to this case is incorrect.

sale of the plaintiff's actual photograph, not to sell a different product. Here, Plaintiff Smith alleges that Defendant uses her information in a free profile page "to advertise subscriptions to its platform and related products and services." Dkt. #1 at 251. This is a separate product. *See Green v. Datanyze*, LLC, 2024 WL 168123, at *2 (N.D. Ill. May 21, 2018) (distinguishing the *Thompson* and other plaintiffs because "the plaintiffs [there] alleged that their identities were being sold as standalone products rather than as a part of a subscription that included a range of other content."). Furthermore, many courts have rejected this "separate product" requirement, recognizing that "[t]he plain text of the IRPA does not support imposing such a requirement." *Whitepages, Inc.*, 2025 WL 1796574, at *7 (quoting *Green*, 2024 WL 168123, at *3 and citing Green at *2 (collecting cases)). The Court finds that Plaintiff Smith states an IRPA claim.

    **iv. Plaintiff Nicastro's Ohio Right of Publicity in Individual's Persona Act Claim**

Finally, Defendant argues that Plaintiff Nicastro's ORPIPA claim should be dismissed because she "cannot demonstrate that her name or likeness has value," and the alleged use is incidental. Dkt. #18 at 21-23.

ORPIPA prohibits the use of "any aspect of an individual's persona for commercial purpose[,]" Ohio Rev. Code Ann. § 2741.02(A), including "using a persona in connection with any product, advertising a product, or soliciting the purchase of a product." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 450 (6th Cir. 2021). "'Persona' means an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code Ann. § 2741.01(A). "Two considerations help establish the commercial value of a name or likeness: '(1) the distinctiveness of the identity and . . . (2) the degree of recognition of the person among those receiving the publicity.'" *Hudson v.*

*Datanyze, LLC*, Case No. 23-3998, 2025 WL 80806, at *2 (6th Cir. 2025) (quoting *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio Ct. App. 2020)).

The Court, again, finds the reasoning in *Whitepages, Inc.*, compelling to conclude the use alleged here is non-incidental. Defendant relies on *Hudson v. Datanyze*, LLC, 702 F. Supp. 3d 628 (N.D. Ohio 2023), for its incidental argument. Dkt. #18 at 22. The *Hudson* district court relied, in part, on two cases: *Vinci v. Am. Can. Co.*, 69 Ohio App. 3d 727 (1990) and *Harvey v. Systems Effect*, LLC, 154 N.E.3d 293 (Ohio Ct. App. 2020). *See* 702 F.Supp.3d 628 at 634. All these cases and more were considered by the *Whitepages, Inc.*, court. *See Whitepages, Inc.*, at *7-9. Though noting that "Ohio has an incidental use exception that may not apply under other states' right of publicity laws[,]" the court distinguished the above cases from the plaintiff's claims because none of those cases "hold that use of a plaintiff's personal information to sell more information about them is incidental use exempt from liability." *Id*. at *9.

The question of "commercial value" is a bit trickier. In *Hudson v. Datanyze, LLC*, the Sixth Circuit affirmed the Northern District of Ohio's decision but did not discuss incidental use. *See gen*. 2025 WL 80806 (6th Cir. Jan. 13, 2025). Looking to commercial value, the Sixth Circuit determined that the plaintiffs did not allege commercial value as required by the ORPIPA. There, the plaintiffs argued that the "misappropriation of their names or likenesses to solicit paid subscriptions, in and of itself, demonstrates commercial value." *Id*. at *3. The court reasoned that "[n]either Ohio courts, nor this court when applying Ohio law, have endorsed this theory." *Id*. The court then stated that, because the plaintiffs did not allege the defendant "curated and delivered, or otherwise highlighted, Plaintiffs' profiles to potential customers[,] [n]or do Plaintiffs allege their profiles were specially maintained . . . [there was no] allegation to indicate that Datanyze did anything more than treat Plaintiffs' profiles like the millions of others in is database, [thus] there is no way for us to infer . . . commercial value." *Id*. The plaintiffs also

ORDER DENYING DEFENDANT'S
MOTIONS TO DISMISS AND STRIKE - 13

asserted commercial value because the defendant sold subscriptions to its database, but the Sixth Circuit was not convinced by this reasoning. *Id*. However, the plaintiffs in Hudson did "not allege any differences between the database contents offered in the free trial and the database contents offered for paid subscriptions." 702 F.Supp.3d 628 at 630. They only claimed that they did not give the defendant permission to include their information and use it to solicit paid subscriptions. *Id*.; *see also Hudson*, 2025 WL 80806, at *1.

The Court finds distinguishable differences between *Hudson* and the instant case. Here, Plaintiffs do not only allege that their information is being used without consent to make free profiles to solicit subscriptions. Plaintiffs also allege that Defendant uses source code for free-preview profile pages to ensure they rank highly and numerously in search engine results, that Defendants track the number of times and from where these free profiles are viewed by non-subscribers, and has employees dedicated to these efforts. Dkt. #1 at ¶¶ 78-86. Taking all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have reasonably alleged commercial value within the meaning of Ohio's statute, thus Plaintiff Nicastro states a viable ORPIPA claim.

For these reasons, Defendant's Motion to Dismiss is denied in its entirety.

**B. Motion to Strike**

Lastly, the Court considers Defendant's Motion to Strike Plaintiffs' class allegations pursuant to Fed. R. Civ. P. 12(f). Dkt. #19. Plaintiffs argue that the Motion is "procedurally improper" as premature and "substantively baseless." Dkt. #27. For the following reasons, the Court DENIES this Motion.

**1. Legal Standard**

Rule 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.

R. Civ. P. 12(f). "Rule12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits." *Adan v. Swedish Health Servs.*, Case No. 2:23-cv-01266-TL, 2024 WL 2398208, at *4 (W.D. Wash. May 23, 2024). While some district courts in the Ninth Circuit permit class allegations to be struck at the pleadings stage, most courts decline to strike class allegations prior to class certification motion and discovery. *See Thornell v. Seattle Serv. Bureau*, No. 14-1601, 2015 WL 999915, at *6 (W.D. Wash. Mar. 6, 2015) (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *Cruz v. Sky Chefs, Inc.*, No. 12-02705, 2013 WL 1892337, at *6 (N.D. Cal. May 6, 2013) (compiling cases)). These motions "are *particularly* disfavored 'because the shape and form of a class action evolves only through the process of discovery.'" *Wilmuth v. Amazon.com Inc.*, No. 2:23-CV-01774-NW, 2024 WL 5088337, at *4 (W.D. Wash. Dec. 12, 2024) (quoting *Adan* at *4). "When a defendant moves to strike class allegations from a complaint, the defendant 'properly' bears the 'burden of proving that the class is not certifiable.'" *Id.* (quoting *Adan* at *4).

**2. Analysis**

Defendant argues that the class allegations should be stricken because (1) Plaintiffs have waived their class claims, (2) the Washington statute prohibits class actions, (3) Washington law cannot be applied to putative class members in other states, (4) the Illinois and Ohio statutes preclude class actions, (5) the proposed classes are "overly broad," (6) "individualized issues predominate, making a class action inappropriate," and (7) "a class action is not a superior method to adjudicate the controversy." Dkt. #19.

The Court denies striking class allegations based on waiver or because the WPRA prohibits class actions. First, Defendant's basis for waiver relies on the Arbitration Agreement, which this Court denied in its prior Order. *See* Dkts. #35 and #19 at 2-3. Second, the Court finds

the reasoning in *Whitepages, Inc.* instructive, holding that "even if there were a conflict between Rule 23 and the WPRA's class action bar, Rule 23 displaces the class action bar under either Justice Scalia's or Justice Stevens's approaches" in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and is unconvinced by Defendant's reasoning to conclude otherwise. 2025 WL 1796574, at *13; Dkt. #19 at 3-4.

Finally, Defendant argues that the IRPA and ORPIPA claims must be dismissed because these statutes bar class actions. Dkt. #19 at 7. These statutes contain no express language barring class actions, but Defendant contends that the "language [of the statutes] operates as a class-action bar." *Id*. However, Defendant "cites no authority suggesting that there is an implied class action bar" under either statute. *Whitepages, Inc.*, 2025 WL1796574, at *14. Therefore, the Court will not dismiss these claims.

Regarding Defendant's other arguments, "[t]his case is in its earliest stages . . . . [The Court] cannot at this time conclude that the class is uncertifiable as a matter of law." *Patrick v. Ramsey*, No. C23-0630JLR, 2023 WL 6680913, at *3. On Rule 12(f) motions, the "court should not resolve disputed and substantial factual or legal issues." *Adan*, 2024 WL 2398208, at *4. The Court declines to resolve these issues at the pleading stage and deprive Plaintiffs of the opportunity to fully brief the class certification issue. *See Sousa v. 7-Eleven Inc.*, No. 19-CV-2142 JLS (RBB), 2020 WL 6399595, at *5 (S.D. Cal. Nov. 2, 2020) (collecting cases where courts express reluctance to preemptively deny plaintiffs the opportunity to present a motion for class certification); *Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2016 WL 4472930, at *4 (W.D. Wash. Mar. 7, 2016) ("Plaintiffs deserve the chance to develop the facts surrounding the class definition—and if necessary, the class definition itself—through class discovery").

For these reasons, Defendant's Motion to Strike is denied.

## IV. CONCLUSION

Having reviewed the instant Motions, the relevant briefings and declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion to Dismiss, Dkt. #18, and Motion to Strike Class Allegations, Dkt. #19, are DENIED.

DATED this 9th day of July, 2025.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE